UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEQUAN GREGORY                                    Case No. 2:22-cv-8
CALDWELL, #891141,

                    Plaintiff,                    Hon. Robert J. Jonker
                                                  U.S. District Judge

        v.

UNKNOWN DEFOREST
and UNKNOWN PARTY,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.      Introduction

        This Report and Recommendation (R&R) addresses Defendant Corrections

Officer (CO) Devin Forrest's[1] motion for summary judgment (ECF No. 26) and

Plaintiff's failure to serve Unknown Party.

        Plaintiff — state prisoner Dequan Gregory Caldwell — filed suit pursuant to

42 U.S.C. § 1983 on January 21, 2022.  In his verified complaint, Caldwell alleges

that CO Forrest and another CO, who remains unknown, used excessive force against

him while he was incarcerated at the Chippewa Correctional Facility (URF) in

Kincheloe, Michigan.  (ECF No. 1.)  More specifically, Caldwell asserts that, while he

fought with two other inmates, the COs tased him in the face.  (*Id.*, PageID.6.)

_____

[1]      CO Forrest was incorrectly identified as Officer DeForest in Caldwell's
complaint.  (ECF No. 1, PageID.1.)

1

CO Forrest now moves for summary judgment. CO Forrest argues that the Court should dismiss Caldwell's claim against him because there are no genuine issues of material fact, CO Forrest lacks personal involvement in the alleged use of force, and the COs utilized reasonable force against Caldwell in order to restore discipline. (ECF No. 27, PageID.115-116.)  Caldwell did not respond to CO Forrest's motion for summary judgment.

The undersigned respectfully recommends that the Court grant CO Forrest's motion for summary judgment.  In the undersigned's opinion, there are no genuine issues of material fact regarding CO Forrest's personal involvement in the tasing. The evidence on the record establishes that CO Carruth, who is not a defendant in this matter, deployed the taser that landed on Caldwell's face.  (ECF No. 27-4, PageID.148.)  Accordingly, the undersigned respectfully recommends dismissing Caldwell's excessive force claim against CO Forrest.

Additionally, the record reflects that since filing in January 2023, Caldwell has not attempted to identify the Unknown Party.  Although Caldwell proceeds *in forma pauperis* and the United States Marshals Service (USMS) is therefore tasked with effectuating service in this matter, USMS is not responsible for identifying the parties to be served; that task falls to Caldwell as the plaintiff in this case.  Therefore, the undersigned recommends that the Court dismiss Caldwell's claim against this Unknown Party without prejudice.

## II.    Factual Allegations

In his verified complaint, Caldwell says that on September 13, 2020, he was engaged in a fight with two other inmates when Defendants became involved.  (ECF No. 1, PageID.6.)  Caldwell alleges that he followed the COs' orders, but they told Caldwell if he laughed one more time, they would shoot him in the face.  (*Id.*)

Subsequently, both COs deployed their tasers, the probes of which imbedded into Caldwell's face.  (*Id.*)  Caldwell alleges that the COs deployed their tasers "to an unbearable degree . . . to inflict pain and suffering." (*Id.*, PageID.6-7.)

Directly after the incident, Caldwell was sent to Sault Ste. Marie Memorial Hospital.  (*Id.*)  Caldwell contends he has "face and eye muscle locking up problems" because of the tasing.  (*Id.*, PageID.7.)  Additionally, Caldwell says he must visit Chippewa Correctional Facility Medical Health Care every other month for continuing healthcare due to the incident.  (*Id.*)

## III.    September 13, 2020 Video

In moving for summary judgment, CO Forrest provided video footage of part of the September 13, 2020, incident.  (ECF No. 28.)

 The video begins with a fight between prisoners already underway.  The first seconds of the footage show Caldwell punching and dragging another inmate down the hall.  (*Id.*, 0:00-00:01 (min:sec – min:sec).)  At that point, a third inmate was laying on the floor behind Caldwell.  (*Id.*)  As Caldwell punched the second inmate and dragged him down the hall, he (Caldwell) tripped over the third inmate, falling to the floor.  (*Id.*)  In the opening seconds of the video, Caldwell is the aggressor in the fight.

The fighting continued after the fall, and multiple Corrections Officers deployed their tasers. (*Id.*) Multiple taser probes hit Caldwell and became attached to him. He was almost immediately incapacitated and stopped fighting. (*Id.*, 00:02.) After a few seconds of incapacitation (*id.*, 00:02-00:07), Caldwell rolled over onto his front and obeyed orders to put his hands behind his back (*id.*, 00:08-00:20). COs then handcuffed Caldwell with his hands behind his back. (*Id.*, 00:30.)

Soon after, Caldwell appeared to lose consciousness, and appeared to be bleeding from his head.[2] (*Id.*, 01:10-01:20.)

Caldwell remained in this position — lying front-down on the floor with his hands cuffed behind his back — for several minutes. After the other inmates were escorted away from the scene, medical staff arrived to assess Caldwell's condition. (*Id.*, 05:40.) Caldwell appeared to remain unconscious as medical staff removed the probes from his face, arm, and torso. (*Id.*, 6:00-8:45.) Eventually, two medical staff and two COs rolled Caldwell onto his back. (*Id.*, 08:22-08:25.) Caldwell momentarily responded when medical staff called his name. (*Id.*, 08:58-09:21.) Within seconds, Caldwell stopped responding. (*Id.*, 09:23-09:25.) The footage ends with Caldwell on the floor, presumably unconscious, surrounded by prison medical staff and COs.[3] (*Id.*, 09:58.)

---

[2]    The precise origin of the bleeding is unclear.

[3]    The undersigned notes that the video footage provided by the MDOC does not include the initial use of force. Additionally, the footage lacks clear audio and, at numerous points, does not include a clear view of Caldwell.

4

## IV.    CO Forrest's Motion for Summary Judgment

The undersigned first addresses CO Forrest's motion for summary judgment. (ECF No. 26.)

### a. **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a non-movant fails to respond to a motion for summary judgment, which is the case here, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden."  *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### b.  Excessive Force Analysis

Caldwell claims that CO Forrest used excessive force against him.  (ECF No. 1, PageID.6.)  To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  "The objective component requires the pain inflicted to be 'sufficiently serious."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298).  "The subjective component focuses on the state of mind of the prison officials."  *Williams*, 631 F.3d at 383.

While all Eighth Amendment claims involve an objective and a subjective component, the objective component is contextual and therefore varies depending on the claim asserted.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Not "every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action." *Hudson*, 503 U.S. at 9.  But when prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident."  *Id.*  Thus, while the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The essential inquiry for an Eighth Amendment claim of excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  In making this inquiry, courts are guided by "factors [such] as the need for application of force, the relationship between the need and the amount of force that was used [and] the extent of injury inflicted." *Id.* at 320-21.

As set forth above, it is undisputed that Caldwell suffered multiple taser hits, including a hit to his face.  The video provided by CO Forrest clearly shows medical staff removing probes from Caldwell's temple.  (ECF No. 28, time 06:00-07:00.)  It also shows that Caldwell lost and regained consciousness multiple times, and that he was bleeding from somewhere on his head after he was tased.  Additionally, the Critical Incident Report states that Caldwell was unconscious and medical staff administered three doses of Narcan, all ineffective, before calling an ambulance. (ECF No. 27-4, PageID.148.)  And Caldwell says he has experienced "face and eye muscles locking up problems, and now ha[s] to go see Chippewa Correctional Facility Medical Health care every other month."  (ECF No.1, PageID.6-7.)  Clearly, the COs involved in the September 13, 2020, incident utilized significant force.

What is less clear is the state of mind the COs possessed when they deployed the tasers that struck Caldwell.  Caldwell contends in his verified complaint that the CO who deployed the taser that hit Caldwell in the face did so "to an unbearable degree . . . to inflict pain and suffering," after expressing that if Caldwell laughed "one more time" the CO would shoot Caldwell "in his f—ing face."  (ECF No. 1, PageID.6.)  However, the video footage of the incident confirms that Caldwell was actively assaulting another inmate when the taser (or tasers) was deployed.  (ECF

No. 28, 00:00-00:01.)  And from what the undersigned can discern, there was no laughter from Caldwell nor any statement from the CO that further laughter would result in the CO tasing Caldwell in the face.[4]  Furthermore, Caldwell admits in his verified complaint that he was fighting other inmates at the time of the incident.[5] (ECF No. 1, PageID.6.)  It therefore appears that the COs utilized force in a good-faith effort to restore discipline, not maliciously or sadistically to cause harm. *Whitley*, 475 U.S. at 320-21.

But even assuming that there is a genuine issue of material fact as to the subjective component of Caldwell's excessive force claim, this Court should dismiss Caldwell's claim against CO Forrest because Forrest was not the CO who tased Caldwell. In moving for summary judgment, CO Forrest provided the Critical Incident Report from the September 13, 2020 incident.  The pertinent portion of the Critical Incident Report is shown below.

---

[4]    However, the undersigned reiterates that it is difficult to hear much of anything in the video provided by CO Forrest.
[5]    Caldwell also admitted as much during the hearing for his Class I Misconduct for fighting.  (ECF No 27-6, PageID.156.)

| | |
|---|---|
| Incident Number: | URF-116-2020-C | Category: Prisoner |
| Security Level: | II, IV | Level of Prisoner(s) Involved: II |
| Incident Date: | 9 /13/2020 | Main Location: Housing |
| Time: | 22:24 | Specific Location: Neebish Unit |
| Shift: | 3rd | |

On 9/13/2020 at 2224 hours, a three (3) prisoner fight broke out in the Neebish Unit D Wing Hallway between prisoner Caldwell 891141, prisoner Bradley 452330, and prisoner Harrison 307242.  All three (3) prisoners were exchanging closed fist blows to head and body of each other.  Officer J. Carruth called "Fight in Neebish Unit", via his hand-held radio.  Officer D. Forrest drew and activated ECD #7 while giving loud, verbal orders to "Stop fighting!"  None of the prisoners complied with the orders and Officer D. Forrest discharged cartridge 1, striking prisoner Bradley in upper left back and the lower right back.  Prisoner Harrison stopped fighting and laid down on the Neebish Unit Hallway Floor.  Prisoner Caldwell continued dragging prisoner Bradley down the Neebish Unit Hallway while delivering closed fist strikes to prisoner Bradley's head and upper body area.  ==Officer Carruth responded to the scene while drawing and activating ECD #10.  Officer Carruth discharged cartridge 1, striking prisoner Caldwell in the center of the chest and left forearm.  Prisoner Caldwell tripped over prisoner Harrison and he fell to his buttocks on the floor where he attempted to deliver another closed fist strike to prisoner Bradley's head.  Officer Carruth deployed cartridge #2, striking prisoner Caldwell in the upper left leg and the right face cheek area.  The second ECD Discharge achieved a Neuro Muscular Incapacitation (NMI) and all three (3) prisoners== complied with Staff orders to place their hands behind their backs to be restrained.  Officer Ch. LaPonsie placed hand restraints on prisoner Bradley and he was escorted to Segregation by Officer Ch. Laponsie and Officer D. Forrest.  Officer J. Chupailo placed hand restraints on prisoner Harrison and he was escorted to Segregation by Officer Chupailo and Officer R. Cook.  Officer M. Maclaren placed hand restraints on prisoner Caldwell, and once the hand restraints were applied, prisoner Caldwell became unresponsive.  Health Services was notified, via handheld radio, to report to Neebish Unit for an unresponsive prisoner.  RN N. Duncan and LPN S. Pearce responded to Neebish Unit to assess prisoner Caldwell.  Prisoner Caldwell did not have any obvious trauma and he was not responding to sternal rubs.  The hand restraints were removed, an AED was applied to prisoner Caldwell's chest and the AED reported, "No Shock Advised!"  RN Duncan removed four (4) ECD probes from prisoner Caldwell and administered a dose of Narcan into prisoner Caldwell's right thigh at 2240 hours.  The Narcan generated no positive results in prisoner Caldwell's condition.  At 2245 hours, a second dose of Narcan was administered into prisoner Caldwell's left leg and it was also ineffective.  The Control Center was notified that an outside Ambulance was required and the Ambulance service was contacted at 2245 hours.  A third dose of Narcan was administered at 2250 hours into prisoner Caldwell's right deltoid and it also ineffective.  An IV was then started on prisoner Caldwell.  The ambulance arrived on grounds at 2251 hours and the Ambulance Crew was escorted into Neebish Unit to assess prisoner Caldwell.  At 2302 hours, Officer C. Chancey retrieved the Facility Mini Ambulance and proceeded to Neebish Unit to assist.  Prisoner Caldwell was placed on a backboard to be transitioned to the Ambulance crew's gurney.  Prisoner Caldwell was placed in belly chains and leg irons for the off-site transport.  At 2310 hours, prisoner Caldwell was escorted out of Neebish Unit and outside of the secure perimeter to where the Ambulance was waiting at Door 400.  The Ambulance left Facility grounds at 2316 hours enroute to War Memorial Hospital (WMH), escorted by Officer Chupailo inside of the Ambulance and Officer Carruth following in the State Chase Vehicle.  At 0258 hours, Officer Carruth and Officer Chupailo notified the Facility that prisoner Caldwell was being discharged from WMH.  At 0320 hours, prisoner Caldwell was returned to the Facility and placed in Steamboat Unit Cell 402 with a Prisoner Observation Aid (POA) per A/Deputy Warden J. Corrigan.  All three (3) prisoners were written Misconducts for Fighting.

(ECF No. 27-4, PageID.148.)  The Critical Incident report identifies CO Carruth, not CO Forrest, as the individual who deployed the taser that struck Caldwell in the face. And in a declaration attached to his motion for summary judgment, CO Forrest confirms that he discharged his taser against another inmate by the name of Bradley, while CO Carruth discharged his taser against Caldwell.    (ECF No. 27-5, PageID.153.)

Furthermore, although Caldwell identified CO Forrest as one of the individuals who tased him in his verified complaint, Caldwell admitted during his deposition that he did not remember which COs were involved in the incident.  That portion of his deposition testimony is shown below.

```
 6   Q    So based on your information from the ticket, what was it
 7        excessive that you think that CO Forest did?
 8   A    To be fair, I can't even tell you.  I don't know.  I -- I
 9        can't -- I can't even remember a CO who was there.  And they
10        did that -- when I did -- when I got the ticket and his name
11        was on there, I'm, "Okay.  Well, he must have been one of
12        the CO's that was -- that was there at the incident."
13        The -- the other CO's I put unknown because I don't -- I
14        don't know who it is, and I know that the facility not going
15        to tell me who it was because they trying to protect
16        theirself.
```

(ECF No. 27-2, PageID.141.)

For a state actor to be held personally liable under § 1983, they must have been personally involved in the violation of the plaintiff's rights.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *Bennett v. Schroeder*, 99 F. App'x 707, 713-714 (6th Cir. 2004).  In other words, claims against public officials in their personal capacity "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), *cert. denied*, 526 U.S. 1115 (1999)).  Ultimately, there are no genuine issues of material fact, and the evidence on the record establishes that CO Forrest was not personally involved

in the use of force against Caldwell on September 13, 2020.  As such, the undersigned respectfully recommends that the Court grant CO Forrest's motion for summary judgment.

## V.    Failure to Serve

As a final matter, the undersigned addresses the lack of service with respect to Defendant Unknown Party.  Federal Rule of Civil Procedure 4(m) sets forth the deadline for service of process.  It provides the following:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Caldwell filed his complaint on January 21, 2022 — more one-and-a-half years ago.  (ECF No. 1.)  Because this Court granted Caldwell leave to proceed *in forma pauperis*, this Court was obligated to issue Caldwell's summons to USMS for service "once reasonable steps [were] taken to identify for the court the defendants named in the complaint." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process and perform all duties in such cases.").

It is not apparent that Caldwell has taken any reasonable steps to identify the unknown party since the inception of this case.  In the portion of his deposition set forth above, Caldwell complained that he could not recall which officers tased him, and that the facility was not going to tell him.  (ECF No. 27-2, PageID.141.)  But CO

11

Forrest attached the Critical Incident Report from September 13, 2020 incident to his motion for summary judgment, and that Critical Incident Report identified the CO who tased Caldwell.  (ECF No. 27-4, PageID.148.)  And CO Forrest confirmed the identity of that CO in the declaration attached to his motion for summary judgment. (ECF No. 27-5, PageID.153.)  It is therefore unclear why Caldwell has not responded to CO Forrest's motion or moved to substitute the Unknown Party, unless Caldwell has abandoned the prosecution of this case.  *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 940 (E.D. Mich. 2004) ("[A] plaintiff may not remain silent and do nothing to effectuate service.  At minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1109 (5th Cir. 1987))).  The undersigned therefore recommends that the Court dismiss Caldwell's claim against Unknown Party without prejudice.

## VI.    Recommendation

The undersigned respectfully recommends that the Court grant CO Forrest's motion for summary judgment.  In the opinion of the undersigned, there are no genuine issues of material fact as to CO Forrest's personal involvement in the alleged violation of Caldwell's Eighth Amendment rights; the evidence on the record establishes that CO Forrest was not the officer who utilized force against Caldwell.

The undersigned additionally recommends that the Court dismiss Caldwell's claim against Unknown Party without prejudice.  In the undersigned's opinion,

Caldwell has failed to take reasonable steps to identify the unknown party, warranting dismissal for failure to serve under Federal Rule of Civil Procedure 4(m).

If the Court accepts this recommendation, this case will be dismissed.


Dated:  August 16, 2023                          /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).